UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

  *vs.*　　　　　　　　　　　　　　　　Case No.　19-cr-7-wmc

GREGORY HUFTEL,

    *Defendant*.

**SUPPLEMENTAL SENTENCING MEMORANDUM**

The Court should sentence Gregory Huftel to 60 months' imprisonment. Dr. Channell's report (DE 29) notes that Huftel's performance on a standardized, objective risk-assessment shows that he poses a below-average risk of recidivating. (DE 29:11.) The risk-assessment has data and science behind it. Conversely, Channell's subjective examinations, which get top billing in the report, bring to mind the adage: For the hammer, everything looks like a nail. Channell's analysis is flawed because it sees only nails. The report therefore isn't a proper basis for either aggravating Huftel's prison sentence or imposing a no-contact supervised release condition.

### 1. The report isn't useful to the Court because it is inherently flawed.

The report's flaws are many, but its primary one is bias. The defense doesn't argue here that Channell has a personal bias against Huftel or criminal defendants generally. That's silly. It's fair to assume that, like most people, Channell makes a good faith effort to acquit the duties he has to his employer. But the Court can't ignore that Channell's track record doesn't inspire confidence. Counsel searched Westlaw for every decision that mentions Dr. Channell and his opinion on a matter of forensic psychology.[1] For 20 of the 23 individuals he examined, he sided with the government or against the defendant. *United States v. Kidd*, 796 F. App'x 221, 222 (5th Cir. 2020) (defense challenged competence; Channell opined Kidd was competent); *United States v. Wells*, 17-cr-12, 2019 WL 5777773, *1-*2 (S.D. Ga. Oct. 19, 2019) (defense raised competency issue; Channell concluded that

---

[1] A copy of the search results list is attached as Exhibit A. The decisions cover 23 different defendants or civil-committees across 27 decisions; Messrs. Gillispie, Mahoney, Battle, Lundy, and Mentzos appear twice. The 28th decision involves a prisoner lawsuit against Channell, which was dismissed under Rule 12(b)(6) because the prisoner did not exhaust his administrative remedies. *See Sergentakis v. Channell*, 272 F.Supp.3d 221, 226-228 (D. Mass. 2017). The prisoner had alleged in the complaint that Channell told him, while he was committed for a competency evaluation at FMC-Devens, that "'unless you plead guilty you will be civilly committed for 10 years. Unless you plead guilty we can forcibly medicate you with mind altering drugs. If you do not reveal privileged information regarding how you will defend yourself at trial I will be forced to report you incompetent.'" *Id.* at 224.

Well was competent); *United States v. Lucas*, 17-cr-129-EAW, 2019 WL 1986617, *1-*2 (W.D.N.Y. May 6, 2019) (defense moved for competency hearing; Channell found Lucas competent); *United States v. Bangura*, 765 F. App'x 928, 929 (4th Cir. 2019) (defense moved for competency evaluation; Channell found Bangura competent); *United States v. Porter*, 907 F.3d 374, 378 (5th Cir. 2018) (defense moved district court to find Porter incompetent to stand trial; Channell found him competent); *United States v. Smith*, 743 App'x 606, 609 (6th Cir. 2018) (Channell concluded that defendant, who had an IQ of 60 and who had previously had IQs measuring between 40 and 50, was competent to stand trial); *United States v. Stone*, 15-cr-161-LM, 2018 WL 2417857, *1-*4 (D.N.H. May 29, 2018) (defense moved for competency evaluation; Channell concluded Stone was competent; district court held that Stone was incompetent and not restorable); *United States v. Mashali*, 298 F.Supp.3d 274, 277-78 (D. Mass. 2018) (defense moved for competency hearing; Channell opined that Mashali was competent); *United States v. Gillispie*, 16-cr-77, 2017 WL 9249534, *3-*4 (E.D. Tenn. Apr. 20, 2017) (defendant challenged his competency; Channell opined that Gillespie was competent to stand trial), *adopted by United States v. Gillespie*, 16-cr-77, 2017 WL 2779698 (E.D. Tenn. June 27, 2017); *United States v. Mahoney*, 249 F.Supp.3d 561, 561-562 (D. Mass. 2017) (defendant moved to discharge civil

commitment; Channell concluded Mahoney wasn't fit for release); *United States v. Hoyt*, 15-cr-1, 2016 WL 776595, *1-*2 (S.D. Ohio Feb. 29, 2016) (mentioning competency evaluation);[2] *United States v. Mahoney*, 53 F.Supp.3d 401, 410 (D. Mass. 2014) (Channell recommended Mahoney be civilly committed); *United States v. Ruston*, 447 F. App'x 557, 558 (5th Cir. 2011) (Channell concluded that Ruston shouldn't be released from civil commitment); *United States v. Commey*, CR-00-1037 (DGT), 2010 WL 3613825, *7 (E.D.N.Y. Sept. 7, 2010) (Channell opined that Commey was too dangerous to release from civil commitment); *United States v. Battle*, 613 F.3d 258, 260 (D.C. Cir. 2010) (Channell's report to the district court concluded that Battle was competent to stand trial);[3] *United States v. Fanning*, 10-cv-10543-NG, *2 (D. Mass. July 14, 2010) (Channell supported government's effort to keep Fanning civilly committed after expiration of prison term); *United States v. Ross*, Criminal No. 08-109-JD, 2009 WL 2490101, *3 (D.N.H. Aug. 12, 2009) (Channell opined that Ross was malingering and was competent to stand trial); *Lundy v. Hollingsworth*, Cr. No. 03-354-02 (JBS),

---

[2] In *Hoyt*, the defendant challenged his competency to stand trial. Channell authored a report that concluded Hoyt was competent. *See United States v. Hoyt*, 15-cr-1, docket entry no. 41 (S.D. Ohio Jan. 3, 2017).

[3] Channell's report is also mentioned in *United States v. Battle*, 05-cr-234 (RMU), 2007 WL 7771049, *2 (D.D.C. Sept. 2007).

2009 WL 1372577, *3 (D.N.J. May 15, 2009) (Channell concluded Lundy was competent to proceed on contempt charge); *Lundy v. Yost*, Cr. No. 03-354-02 (JBS), 2008 WL 4378207, *4 (D.N.J. Sept. 22, 2008) (Channell concluded that Lundy was competent to follow court's orders); *United States v. Shrake*, No. 05-cr-133-S, 2006 WL 6021176, *1 (W.D. Wis. June 23, 2006) (Channell opined that Shrake was competent to stand trial); *United States v. Mentzos*, Crim. No. 04-173 (ADM/RLE), 2005 WL 8165166, *13 (D. Minn. June 9, 2005) (Channell concluded Mentzos was competent to stand trial).[4]

Channell's conclusions for the remaining three individuals weren't exactly defense-friendly either. In each, he found the defendant to be presently incompetent but opined that treatment could restore the defendant to competency. *United States v. Dennis*, 13-cr-106-BLG-SPW, 2017 WL 374700 (D. Mont. Jan. 25, 2017) (Channell found Dennis incompetent to stand trial); *United States v. Horton*, 941 F.Supp.2d 843, 847 n.2 (N.D. Ohio 2013) (Channell opined that Horton was presently incompetent but could be restored to competency through medication); *United States v. Gilbert*, 10-mj-179-JHR, 2011 WL 778448, *2 (D. Maine Feb. 23, 2011) (Channell opined

---

[4] The same conclusion was addressed in *United States v. Mentzos*, Crim. No. 04-173 (ADM/RLE), 2005 WL 8165169 (D. Minn. Jan. 20, 2005).

Gilbert was presently incompetent but could be restored to competency through medication). Based on this track record, it would be surprising if Channell found Huftel without any pathology.

The lopsided track record isn't surprising when one considers the contexts for Channell and the examinee. Channell's working days are spent with criminal defendants and the civilly-committed. His colleagues do the same thing. Those realities must affect his reasoning whether he's aware of it or not. Training never completely erases the limits we have as humans because psychologists are people too. Like the rest of us, they make all sorts of subconscious assumptions. For Channell, every subject he examines is there against his or her will; there are corrections officers there to protect Channell from inmate violence. The risk of confirmation bias is profound.

Nowhere is Channell's slanted perception more apparent than when he observes that the 30 to 60 minutes' of pornography consumption "a few times a week" that Huftel reported isn't even close to an addiction. (*See* DE 29:12.) For starters, Channell's claim here is alarming: this seems like a lot of pornography consumption. And regardless, Huftel sees it as compulsive. Instead of exploring Huftel's thinking about it, Channell's report is dismissive and then opines that Huftel must be disingenuous. (*See id.*)

The examinee's context matters too. The report gives the false impression that Channell's examination is an objective look at a person's mental life. It's not. Inmates do not approach Channell on equal footing with him. They know that Channell will scrutinize and judge everything they say and do during their meetings. And they know these judgments can mean the difference between freedom and incarceration. These examinations may be routine and familiar for Channell, but they are emotionally fraught experiences for all defendants he evaluates. And, as in Huftel's case, Channell asks the subject to speak candidly about extremely private matters. With, say, years of his life on the line, a subject is asked to discuss his masturbatory and pornography-consumption habits with a stranger employed by the subject's adversary. This kind of charged interaction isn't conducive to finding the truth about a person's inner life. It's conducive to observing how anxiety and power imbalances affect behavior.

Finally, the Court should recognize the traps embedded in the examination. For example, the report notes that Huftel has given "inconsistent" stories about his suicide attempts. Rather than ask Huftel to explain the discrepancy, which is what we do in everyday life to get to the truth, Channell is comfortable with the implication that the inconsistencies are evidence of Huftel's dishonesty and leaves it at that. (*See* DE 29:5.)

The most sinister trap though is the difference between what sources Channell told Huftel his evaluation would rely on and the sources Channell actually relied on. Channell reports informing Huftel in detail about the examination's parameters—right from the start.

- Mr. Huftel was informed of the nature and purpose of the evaluation, and that the evaluation would involve an assessment of his current mental health symptoms, his need for treatment, his risk to the community, and treatment amenability.

- He was informed he would be asked to complete psychological tests during the course of the evaluation.

- He was informed the evaluator could speak with his attorney, the prosecuting attorney, and possibly other individuals, in order to obtain additional information which might be relevant to the evaluation.

- He was informed the evaluator could also review records pertinent to his history and case.

- The defendant was informed any information he provided was not confidential, but subject to inclusion in the evaluation report, which would be made available to the Court and to the prosecuting and defense attorneys.

- Mr. Huftel was also informed staff from FMC Devens could be subpoenaed at a later date to testify regarding this evaluation. The defendant was informed he was not required to participate in the evaluation, however, a report would be prepared and submitted to the court regardless of his level of participation.

(DE 29:1-2.) The report states that Huftel acknowledged he understood the parameters. (DE 29:2.)

But then, in the report's very next sentence, Channell states that his evaluation went beyond the formal items he described to Huftel. "During his time at the facility, the defendant was routinely observed on his housing unit by both clinical and correctional staff, and these observations were incorporated into the findings of this report." (DE 29:2.) Given the detail in the disclosures, the failure to inform Huftel that his every moment at the facility was fair game for the evaluation is glaring. It belies the suggestion that the evaluation has integrity because Huftel knew the terms from the outset. He didn't, and Channell's disclosures to him were misleading.

By contrast, the actuarial test, which the Court should care about most, doesn't implicate any of these flaws. And Huftel's performance on that objective test showed that he has a below-average risk of recidivating. (DE 29:11.) That is, the part of the evaluation that is least influenced by Channell biases and Huftel's surroundings reveals what the Court should be persuaded of by now: that Huftel's not going to make a mistake like this again.

**2. The Court should exercise caution with the no-contact condition because family court, with its procedures and standard of proof, is better equipped to decide the fate of Huftel's relationship.**

A no-contact condition (whether during his prison term or his supervised release term) is at least as significant as Huftel's long prison sentence because it affects his place in his family—at least for the supervised release term's duration, if not forever. The defense urges caution here because family law is much better suited than federal sentencing law for resolving Huftel's relationship with his family. And the U.S. probation office, along with counsel for both parties, are experts in criminal law, not on the ways family law solves conflicts. Put another way, players in the criminal justice system here know a good amount about Huftel; but we know very little about his family and what is best for its members. So, the Court should refrain from setting conditions that are effectively judgments about the family when Huftel's family isn't central to his case's disposition.

Dated at Madison, Wisconsin, this June 18, 2020.

                                          Respectfully submitted,

                                          */s/ Peter R. Moyers*
                                          Peter R. Moyers
                                          Counsel for Gregory Huftel

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
peter_moyers@fd.org